UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAKIKO NAKAGAWA,

    Plaintiff,

v

MICHIKO NAKAYAMA, MOUSA AHMAD, SONNY MANDOUH, SUMMIT FINANCIAL LLC, WARREN FUNDING LLC and AZA MANAGEMENT LLC,

    Defendants.

Case No.

Hon.

Magistrate Judge

_____/

## VERIFIED COMPLAINT

Plaintiff Makiko Nakagawa, through undersigned counsel, submits the following as her Verified Complaint:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Makiko Nakagawa is an individual residing in Taipei, Taiwan.

2. Defendant Michiko Nakayama ("Nakayama") is an individual, upon information and belief residing in Las Vegas Nevada, and at all relevant times acted as Plaintiff's agent in overseeing real estate investments and secured loans in Michigan.

1

3. Defendant Warren Funding LLC is a Michigan limited liability company whose managing member is Michiko Nakayama.

4. Defendant Mousa Ahmad is an individual residing in Michigan and operates AZA Management LLC, which was involved in unauthorized financial transactions affecting Plaintiff's investments.

5. Defendant AZA Management LLC ("AZA") is a Michigan limited liability company.

6. Defendant Summit Financial LLC is a Michigan limited liability company.

7. Defendant Sonny Mandouh is an individual residing in Michigan and member of Summit Financial LLC.

8. Subject-matter jurisdiction in this court is proper under 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, exclusive of interest and costs, and the parties are citizens of a State and citizens or subjects of a foreign state.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Michigan.

**GENERAL FACTUAL ALLEGATIONS**

10. In early 2022, Plaintiff engaged Nakayama to act as her agent in investing in real estate and loaning funds to borrowers in Michigan.

11. Nakayama accepted this role, creating a fiduciary relationship requiring her to act in Plaintiff's best interests.

12. Plaintiff relied on Nakayama to provide accurate financial assessments, secure investments, and act in a transparent manner.

13. Nakayama introduced Plaintiff to Mandouh, representing him as an experienced real estate investor who rehabilitated properties for profit.

14. Relying on Nakayama's assurances, Plaintiff agreed to loan funds to Mandouh for multiple properties:

    a. 640 Chicago Blvd, Detroit, MI ($375,000 loan)

    b. 14548 Archdale St, Detroit, MI ($180,000 loan)

    c. 19701 Cheyenne St, Detroit, MI ($150,000 loan)

15. Unbeknownst to Plaintiff, Nakayama had a long-standing business and financial relationship with Mandouh that predated her introduction of him to Plaintiff. In an email dated April 3, 2024, Nakayama admitted:

> "I had been working with Sonny for over 10 years, and I had been overconfident in his abilities and creditworthiness, so I had been lenient with the loan appraisal."

3

16. Nakayama did not disclose her prior financial dealings or history of leniency with Mandouh to Plaintiff before facilitating loans and investments on his behalf. Nakayama instead portrayed Mandouh as a trustworthy borrower, omitting material information regarding her prior leniency in financial assessments and failure to enforce collections.

17. Nakayama's communications also reflect a personal and professional stake in Mandouh's financial stability, which she did not disclose to Plaintiff before facilitating investments. In the same April 3, 2024 email, Nakayama stated:

> "If Sonny was just a client, I would not be able to cooperate with him like this, so in that sense, he is trying to be a loyal companion to me."

18. This statement demonstrates that Nakayama placed her loyalty to Mandouh above her obligations to Plaintiff, actively concealing that her personal business ties to Mandouh created a direct conflict of interest.

19. Nakayama also concealed the fact that she took control of Plaintiff's investments by having properties deeded into an entity under her control without Plaintiff's knowledge or approval.

20. Nakayama refuses to release the properties to Plaintiff, despite Plaintiff holding mortgages on each property.

21. Nakayama falsely assured Plaintiff that she would oversee property improvements and maintain regular communication with Mandouh but failed to do so.

22. Nakayama failed to disclose her financial gain from the Monica property. In an email dated May 16, 2024, she received $32,377.18 from the title agency from the sale of Monica but falsely claimed no profit. After deducting $12,000 in repairs and less than $8,000 in property taxes, she profited over $12,000.

23. Nakayama misled Plaintiff about property sales, falsely stating in a July 27, 2024 email that selling 19701 Cheyenne at a loss was the best option.

24. On August 7, 2024, Nakayama claimed neighborhood opposition made it difficult to show 640 Chicago to buyers, yet a separate realtor confirmed that buyers could view the property without issue.

25. Nakayama collaborated with Mousa Ahmad of Mutual Property Management, who benefitted financially through inflated repair costs and improper deductions from Plaintiff's funds.

26. Nakayama and Ahmad have continued to charge fees to Plaintiff despite not performing any work and allowing the value of the properties to diminish and fall into a state of disrepair.

27. Nakayama and Ahmad failed to repair the lock at 14548 Archdale, leading to theft of a furnace, water heater, three beds, and an oven.

28. Nakayama and Ahmad substantially overpaid a $334.12 water bill for the Cheyenne property, creating a credit of $7,220.80 that has not been refunded.

29. Together, Nakayama and Ahmad founded funditdetroit.com to facilitate real estate brokerage activities, further demonstrating that their actions were coordinated to benefit themselves at Plaintiff's expense.

30. Nakayama and Ahmad, through AZA, engaged in fraudulent overbilling by inflating repair costs, issuing redundant invoices, and demanding unjustified payments for alleged property management services that were never performed.

31. Nakayama fraudulently induced Plaintiff to transfer $86,515.62 via Wise for repair costs, property taxes, and water arrearages, misrepresenting the necessity and legitimacy of these payments.

32. Nakayama charged $5,000 per property per year or 10% of collected amounts as a "collection fee," despite not being a licensed real estate broker in the State of Michigan.

33. AZA failed to perform essential property maintenance, leading to city-imposed fines on 640 Chicago, 19701 Cheyenne, and 14548 Archdale for

6

uncut lawns and code violations, despite charging Plaintiff for lawn maintenance services.

34. Plaintiff has suffered substantial financial harm due to fraudulent overbilling, property neglect, and unauthorized expenditures, warranting compensatory and punitive damages.

**COUNT I - BREACH OF FIDUCIARY DUTY (Defendant Nakayama)**

35. Plaintiff realleges and restates all allegations as set forth in this Complaint.

36. As a fiduciary, Nakayama owed a duty of, among other things, fair dealing, honest and prompt disclosure of material facts, care, loyalty, candor, and to act in good faith toward the Plaintiff, consistent with the standards of fiduciary obligation discussed above herein.

37. Nakayama has breached her fiduciary duty to the Plaintiff by engaging in the unlawful schemes and enterprises set forth herein, including but not limited to.

    a. Quitclaiming properties tied to the Mandouh investment to Warren Funding, LLC, an entity controlled by Nakayama without authority.

  b. Demanding $86,515.62 from Plaintiff for "collection strategy" expenses related to Mandouh's loans, despite previous assurances that Mandouh was financially stable.

  c. Signing a purchase offer for 640 Chicago at $275,000 and accepting a reduced listing price for 14548 Archdale without Plaintiff's authorization.

  d. Agreeing to lower the sale price of 640 Chicago to $250,000 and adding multiple unauthorized repair costs from AZA.

  e. Signing a sales listing agreement for 19701 Cheyenne without Plaintiff's consent.

  f. Executing a sales contract for 14548 Archdale for $190,000 without authorization.

  g. Inflating 19701 Cheyenne 's repair costs from $20,000 to $50,000 without support or approval from Plaintiff.

38. Furthermore, at all times, Nakayama, in spite of her fiduciary duties of disclosure, has fraudulently withheld and concealed her various schemes of artifice to perpetrate the unlawful conduct described herein.

39. As a direct and proximate result of Nakayama's breaches of her fiduciary duties, the Plaintiff has incurred significant damages.

40. Nakayama's conduct set forth herein was wanton, willful, and malicious, and the Plaintiff is therefore entitled to exemplary damages.

## COUNT II – FRAUD (Defendant Nakayama)

41. Plaintiff realleges and restates all allegations as set forth in this Complaint.

42. Nakayama made multiple material misrepresentations of fact to Plaintiff, including but not limited to:

   a. Falsely representing that Mandouh was a reliable borrower without disclosing her longstanding financial relationship and prior leniency in enforcing repayment obligations.

   b. Misrepresenting the security of Plaintiff's investments by failing to properly secure collateral or record mortgage interests.

   c. Stating that Plaintiff's funds were used for necessary repairs, when in reality, excessive and unauthorized expenses were funneled to AZA, owned by Defendant Ahmad.

   d. Inducing Plaintiff to approve investments based on incomplete, misleading, and intentionally deceptive financial information.

43. Nakayama knew that these representations were false when made or made them with reckless disregard for the truth.

44. Nakayama intended for Plaintiff to rely on these misrepresentations in making significant financial investments.

45. Plaintiff reasonably relied on Nakayama's statements due to Nakayama's position of trust and authority.

46. As a direct and proximate result of Nakayama's fraud, Plaintiff suffered substantial financial losses, including but not limited to misallocated investments, unnecessary expenses, and lost loan recovery opportunities.

47. Nakayama's actions were intentional, willful, and malicious, warranting an award of punitive damages in addition to compensatory relief.

### COUNT III – SILENT FRAUD (Defendant Nakayama)

48. Plaintiff realleges and restates all allegations as set forth in this Complaint.

49. Nakayama owed Plaintiff a duty of full disclosure due to their fiduciary relationship and Defendant's position as Plaintiff's agent in handling financial investments.

50. Nakayama intentionally concealed material facts that she had a duty to disclose, including but not limited to:

    a. Failing to inform Plaintiff of her longstanding financial relationship with Mandouh, despite vouching for his credibility.

10

    b.    Concealing the true financial status of the properties Plaintiff invested in, including the undervaluation of assets and unauthorized deductions for repairs.

    c.    Withholding critical information regarding unauthorized financial transactions, including signing contracts without Plaintiff's approval.

51. Nakayama intended to mislead Plaintiff and induce reliance by failing to disclose these material facts.

52. Plaintiff reasonably relied on Nakayama's silence, believing she was making informed investment decisions.

53. As a direct and proximate result of Nakayama's fraudulent concealment, Plaintiff suffered severe financial harm and loss of investment capital.

54. Nakayama's deliberate and deceptive non-disclosures warrant an award of punitive damages, in addition to compensatory relief.

### COUNT IV – CIVIL CONSPIRACY (All Defendants)

55. Plaintiff realleges and restates all allegations as set forth in this Complaint.

56. Defendants Michiko Nakayama and Mousa Ahmad knowingly and willfully agreed and conspired to defraud Plaintiff and wrongfully misappropriate her investments for their own financial benefit.

57. Defendants engaged in overt acts in furtherance of their conspiracy, including but not limited to:

    a. Concealing Nakayama's financial interest in Mandouh and misrepresenting his creditworthiness to induce Plaintiff's investments.

    b. Coordinating the transfer of Plaintiff's investments into an entity controlled by Nakayama without Plaintiff's knowledge or consent.

    c. Funneling unauthorized payments to AZA, an entity controlled by Defendant Ahmad, for inflated or unnecessary repair costs.

    d. Misrepresenting property values and repair costs to justify additional, unauthorized deductions from Plaintiff's funds.

    e. Fraudulently executing property transactions and financial agreements without Plaintiff's knowledge or approval.

58. Defendants acted in concert with one another to systematically deprive Plaintiff of her funds, property, and rightful financial returns.

59. As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered substantial financial harm, including loss of investment capital, excessive fees, and fraudulent property sales.

60. Defendants' actions were intentional, malicious, and in reckless disregard of Plaintiff's rights, warranting an award of compensatory, punitive, and exemplary damages.

**COUNT V – BREACH OF CONTRACT (Defendants Mandouh and Summit Financial LLC)**

61. Plaintiff realleges and restates all allegations as set forth in this Complaint.

62. Plaintiff entered into valid and enforceable contracts with Defendants Sonny Mandouh and Summit Financial LLC, including promissory notes and mortgages, under which Defendants agreed to repay specific loan amounts.

63. The promissory notes included loans secured by mortgages on the following properties:

    a. 640 Chicago Blvd, Detroit, MI ($375,000 loan) (Exhibit A)

    b. 14548 Archdale St, Detroit, MI ($180,000 loan) (Exhibit B)

    c. 19701 Cheyenne St, Detroit, MI ($150,000 loan) (Exhibit C)

(Signed copies are believed to be in the possession of Defendants)

64. Defendants breached these contracts by failing to make required loan payments, failing to maintain the properties securing the loans, and transferring properties without Plaintiff's authorization.

65. As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered substantial financial harm, including unpaid loan amounts, foreclosure-related costs, and devaluation of property investments.

66. Plaintiff is entitled to damages in an amount exceeding $500,000, plus interest, attorney's fees, and costs.

**COUNT VI – FORECLOSURE OF MORTGAGE (Defendants Mandouh and Summit Financial LLC)**

67. Plaintiff realleges and restates all allegations as set forth in this Complaint.

68. Defendants have defaulted on their obligations under the promissory notes and mortgages by failing to pay the indebtedness as required.

69. Interest on the 640 Chicago Blvd note continues to accrue at a per diem rate of $133.56.

70. Interest on the 14548 Archdale St note continues to accrue at a per diem rate of $83.84.

71. Interest on the 19701 Cheyenne St note continues to accrue at a per diem rate of $94.44.

72. By failing to pay the principal and interest on the notes when due, Defendants have defaulted in its performance of the terms and conditions of the mortgages.

73. Under the terms of the promissory notes and mortgages, Plaintiff is entitled to collect all costs and expenses incurred in pursuing its remedies, including all costs of collection and attorney fees.

74. Defendants have no defense to payment of the amounts as stated earlier.

75. No proceedings other than this action have been instituted to recover the debt evidenced by the promissory notes and mortgages or any part of it.

76. Because Defendants are in default as described above, Plaintiff is entitled to, among other relief foreclosure of the mortgages and the sale of the properties to satisfy, in whole or in part, the obligations of Defendants under the mortgages.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A money judgment against Defendants in the appropriate amount and all other appropriate equitable relief as requested herein or otherwise available at law.

B.   Provide in the judgment against Mandouh and Summit Financial LLC that, if they fail to pay the judgment in the time prescribed by law, order the foreclosure of the mortgages and the sale of the properties pursuant to Michigan law to satisfy the obligations evidenced by the notes and the mortgages, together with interest, costs, and attorney fees; and any taxes, insurance, and other amounts paid to preserve, repair, and protect the properties by Plaintiff during the redemption period;

C.   Further provide in the judgment that, on the foreclosure and sale, after expiration of any applicable redemption period, the purchaser at the foreclosure sale shall be the fee owner of the premises sold, free and clear of any interest of Defendants;

D.   All compensatory, actual, incidental, consequential, exemplary and other damages to which she is entitled;

E.   All attorney's fees, costs, and pre- and post-filing interest; and

F.   Any other appropriate legal, equitable, declaratory, and injunctive relief.

                                          Respectfully Submitted,

                                          SOBLE PLC

                                          /s/ George T. Blackmore
                                          David Soble (P49662)
                                          George T. Blackmore (P76942)
                                          31800 Northwestern Hwy, Ste 350
                                          Farmington Hills, MI 48334
                                          (888) 789-1715
                                          dsoble@provenresource.com
                                          gblackmore@provenresource.com
                                          *Counsel for Plaintiff*

Dated: June 23, 2025

## **VERIFICATION**

I, Makiko Nakagawa, declare as follows:

1. I have personal knowledge of the activities set out in the foregoing Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

2. I verify under penalty of perjury under the laws of the United States of America that the foregoing factual statements in this Complaint are true and correct. Executed on June 20, 2025.

*Makiko Nakagawa*
_____
Makiko Nakagawa