Exhibit C
19701 Cheyenne St, Detroit, MI

# Promissory Note

$150,000.00                                                                                         March 15, 2023

For Value Received, Sonny Mandouh, an individual, whose address is 23248 Bonair Street, Dearborn Heights, Michigan, 48127, and Summit Financial LLC, a Michigan limited liability company, whose address is 6 Parklane Boulevard, Suite 545, Dearborn, Michigan, 48126 (collectively referred as "**Borrower**"), promises to pay Makiko Nakagawa, an individual, whose address is 2F No 52, Lane 330, Songjiang Rd, Taipei, Taiwan ("**Lender**") the principal sum of $150,000.00 ("**Principal**") plus interest as provided in this Note on all amounts outstanding, all in lawful money of the United States of America as stated below.

1. **Effective Rate.** The unpaid principal balance of this promissory note (this "**Note**") shall bear interest from the date hereof, computed upon the basis of a year of 270 days for the actual number of days elapsed in a month, at the rate of interest (the "**Effective Rate**") twelve percent (12.00%) per annum.

2. **Payment.** The indebtedness represented by this Note shall be paid to Lender in installments or a lump sum, subject to the Effective Rate. No payment is due until January 17, 2024, in which the Principal, and accrued interest at the time of payment, will be due in full, subject to Paragraph 3 below. The interest after these 9 months that will be due and owing is thirteen thousand five hundred and 00/100 dollars ($13,500.00), plus the principal for a total of one hundred sixty three thousand five hundred and 00/100 dollars ($163,500.00).

3. **Payment Extensions.** At Lender's discretion, and upon a formal written request from Borrower, this Note may be extended subject to the following terms:

    a. <u>Extension</u>: On or before January 17, 2024, and upon Lender's approval of Borrower's request for an extension to pay, Borrower may extend the Due Date by three months until March 17, 2024 by paying a one thousand dollar ($1,000.00) extension fee. If this extension is requested and approved, then this Note will be fully matured and a total payment of one hundred sixty nine thousand dollars ($169,000.00).

4. **Prepayment.** This Note may be prepaid, in whole or in part, without the prior written consent of Lender. However, a minimum of nine months' interest payment must be paid before satisfying this Note. All payments received hereunder shall, at the option of Lender, first be applied against accrued and unpaid interest and the balance against Principal. Interest shall cease accrual on the date that Principal is paid plus unpaid and accrued interest. Borrower expressly assumes all risks of loss or delay in the delivery of any payments made by mail, and no course of conduct or dealing shall affect Borrower's assumption of these risks.

5. **Maximum Rate**. Notwithstanding anything herein to the contrary, in no event shall Borrower be required to pay a rate of interest in excess of the Maximum Rate. The term "Maximum Rate" shall mean the maximum non-usurious rate of interest that Lender is allowed to contract for, charge, take, reserve or receive under the applicable laws of any applicable state or of the United States of America (whichever from time to time permits the highest rate for the use, forbearance or detention of money) after taking into account, to the extent required by applicable law, any and all relevant payments or charges hereunder, or under any other document or instrument executed and delivered in connection therewith and the indebtedness evidenced hereby.

    In the event Lender ever receives, as interest, any amount in excess of the Maximum Rate, such amount as would be excessive interest shall be deemed a partial prepayment of Principal, and, if the Principal hereof is paid in full, any remaining excess shall be returned to Borrower. In determining whether or not the interest paid or payable, under any specified contingency, exceeds the Maximum Rate, Borrower and Lender shall, to the maximum extent permitted by law, (a) characterize any non-principal payment as an expense, fee, or premium rather than as interest; (b) exclude voluntary prepayments and the effects thereof; and (c) amortize, prorate, allocate and spread the total amount of interest through the entire contemplated term of such indebtedness until payment in full of the Principal (including the period of any extension or renewal thereof) so that the interest on account of such indebtedness shall not exceed the Maximum Rate.

6. **Events of Default**. Borrower, without notice or demand of any kind, shall be in default under this Note on the occurrence of any of the following Events of Default:

    a. If any amount due and owing on this Note, any fees due to Lender, any expenses incurred by Lender under this Note, or any and all other liabilities and obligations of Borrower to Lender are not paid when due; or

    b. If any other Event of Default, as defined in the Mortgage referenced below, as may be amended from time to time, occurs.

7. **Remedies**. On the occurrence of any Event of Default, Lender may, without notice, declare the entire unpaid and outstanding Principal balance under this Note and all accrued interest, together with all other indebtedness of Borrower to Lender to be immediately due and payable in full, without presentment, demand, or notice of any kind, all of which Borrower expressly waives. Lender shall then have and may exercise any one or more of the rights and remedies provided in this Note or in any loan agreement, mortgage, guaranty, security agreement, assignment, or other document relating to this Note. The remedies provided for under this Note are cumulative to the remedies for collection of the amounts owing under this Note as provided by law or by any loan agreement, mortgage, guaranty, security agreement, or other document relating to this Note. Nothing in this Note is intended or should be construed to preclude Lender from pursuing any other remedy for the recovery of any other sum to which Lender may be or become entitled for breach of the terms of this Note or any loan agreement, mortgage, guaranty, security agreement, or other instrument relating to this Note.

8. **Costs of Collection.** Borrower agrees, in case of an Event of Default under the terms of this Note or under any loan, security, or other agreement signed in connection with this Note, to pay all Lender' costs for collection of this Note and all other liabilities of Borrower to Lender and enforcement of its rights under this Note, including reasonable attorney fees and legal expenses, including participation in bankruptcy proceedings.

9. **Default Rate of Interest.** During any periods that an Event of Default has occurred and is continuing, after the Due Date, or after acceleration of maturity, the outstanding Principal amount shall bear interest at a rate equal to 5 percent per annum greater than the interest rate otherwise charged under this Note.

10. **Late Charges.** If any required payment is not made within 10 days after the date it is due (other than the total payment of Principal due on the Due Date), at the option of Lender, a late charge in the amount of $200.00.

11. **No Waiver of Default.** Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default. On any Event of Default, neither the failure of Lender promptly to exercise its right to declare the outstanding Principal and accrued unpaid interest to be immediately due and payable nor the failure of Lender to demand strict performance of any other obligation of Borrower or any other person who may be liable shall constitute a waiver of any such rights or a waiver of such rights in connection with any future default on the part of Borrower or any other person who may be liable under this Note.

12. **General.** Borrower and all endorsers and guarantors of this Note, if any, jointly and severally waive presentment for payment, demand, notice of nonpayment, notice of protest or protest of this Note, and diligence in collection or bringing suit and consent to any and all extensions of time, renewals, waivers, or modifications that Lender may grant with respect to payment or any other provisions of this Note and to the release of any collateral or any part of it, with or without substitution. Borrower's liability shall be absolute and unconditional, without regard to the liability of any other party to this Note. This Note shall be deemed to have been executed in, and all rights and obligations shall be governed by, the laws of the State of Michigan. Venue for all actions and disputes under this Note shall lie in Wayne County of the State of Michigan. This Note shall be binding on Borrower and its successors and assigns and the benefits hereof shall inure to Lender and its successors and assigns.

13. **Waiver of Jury Trial.** Lender and each Borrower irrevocably and unconditionally waives its right to a trial by jury in any action, including any claim, counterclaim, cross-claim or third-party claim that is based on, arises out of, or relates to this Note or the indebtedness evidenced by it, including, without limitation, any claim based on, arising out of, or relating to any action or inaction of Lender in connection with any acceleration, enforcement, or collection of this note or such indebtedness.

14. **Other Documents**. This Note has been signed pursuant to the Mortgage of equal date herewith. Reference is made to the above documents for additional terms relating to the transaction giving rise to this Note or the security or support given for this Note and additional terms and conditions under which this Note matures or may be accelerated or prepaid.

Borrower:                                             Borrower:


_____         _____
Sonny Mandouh                                  Summit Financial LLC
                                                              By: Sonny Mandouh
                                                              Its: Authorized Member

# Mortgage

This Mortgage ("**Security Instrument**") is given on March 1ᵗʰ 2023.

The Mortgagor is Summit Financial LLC, a Michigan limited liability company, whose address is 6 Parklane Boulevard, Suite 545, Dearborn, Michigan, 48126 ("**Borrower**"). This Security Instrument is given to Makiko Nakagawa, an individual, whose address is 2F No 52, Lane 330, Songjiang Rd, Taipei, Taiwan ("**Lender**").

Borrower owes Lender the principal sum of One Hundred Fifty Thousand Dollars ($150,000.00) ("**Principal**"). This debt is evidenced by a Promissory Note ("**Note**") dated the same date as this Security Instrument.

This Security Instrument secures to Lender:

(a) The repayment of the One Hundred Eighty Thousand Dollars ($180,000.00) of said debt evidenced by the Note, plus respective interest rates, fees, extensions, and modifications; and

(b) The payment of all other sums, with interest, advanced under Paragraph 8, (Protection of Lender's Rights in the Property) to protect the security of this Security Instrument; and

(c) The performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower does hereby mortgage, grant, warrant, and convey to Lender, with power of sale, the real properties described below.

*See* **Exhibit A** for Legal Description of Property.

Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as (the "**Property**").

Borrower Covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

This Security Instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## **Covenants**

Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Prepayment, and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Taxes and Insurance**. Borrower shall pay all taxes and assessments hereafter levied on the Property before any penalty for non-payment attaches thereto, and submit receipts to Lender upon request, as evidence of payment thereof, also at all times to keep the buildings now or hereafter on the Property insured against loss and damage, in manner and to an amount approved by the Lender, and to deliver the policies as issued to the Lender with the premiums fully paid.

3. **Application of Payments**. All payments received by Lender under Paragraph 1 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under Paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Encumbrances.** Borrower shall promptly pay and discharge all claims, liens, encumbrances, levies, judgments, and charges which are at any time levied, recorded, placed upon, or assessed against the Property, except those which are being contested by Borrower in good faith and concerning which Borrower has reserved the entire contested amount as may be required by Lender. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within seven (7) days of the giving of notice.

5. **Hazard or Property Insurance**. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards including within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

If Borrower fails to maintain coverage described above, Lender may, at Lender's option and Borrower's expense, obtain insurance coverage to protect Lender's interest in the Property in accordance with Paragraph 8. Lender shall have no duty to obtain replacement insurance coverage for anything Borrower may have previously insured other than Lender's mortgagee's interest in the Property.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty-day period will begin when the notice is given to Borrower.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or change the amount of the payment. If the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Title.** Borrower hereby represents, warrants, covenants and certifies Borrower has good, marketable and insurable, indefeasible fee simple absolute title to the Property and improvements located upon it.

7. **Occupancy, Preservation, Maintenance, and Protection of the Property.** Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest.

8. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument or any mortgage which has priority over this Security Instrument, or if there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for

condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

Lender's actions may include, without limitation, paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender is not obligated to take action under this Paragraph, and does not waive its rights by any action or inaction.

Any amounts disbursed by Lender under this Paragraph shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

9. **Inspection**. Lender, or its agent, may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation**. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

    In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any remaining balance shall be paid to Borrower.

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, and Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, then Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of any payments due under the Note or change the amount of such payments.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver**. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors

in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy mentioned herein.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers**. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 23, Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note; (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges**.  If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the statutorily permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices**.  Any notice to Borrower provided for in this Security Instrument shall be given by mailing it by USPS First Class Mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by USPS First Class Mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph.

15. **Governing Law; Severability**.  This Security Instrument shall be governed by Federal Law and by the laws governed by the State of Michigan.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable if in conflict with applicable law.

16. **Transfer of the Property; Supplemental Mortgage; Other Encumbrances**.  Borrower shall provide written notice to the Lender of Borrower's intention to obtain a supplemental mortgage or other financing secured by the Property. Such notice must be provided to the Lender at least fourteen (14) days prior to execution of any second mortgage, or other financing documents. If all or any part of the Property or any interest in it is sold, transferred, or mortgaged (or if a beneficial interest in Borrower is sold, transferred, or mortgaged and

Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

17. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do anything affecting the Property that is in violation of any Environmental Law. Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and include the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

18. **Default; Acceleration; Remedies**. Any of the following shall constitute a "Default" hereunder:
    a. Borrower shall fail to pay any amounts owed to Lender, including any part of the indebtedness due under the Note or shall otherwise be in default as provided in the Note;
    b. Borrower shall default in the due and punctual observance of any other term, covenant or condition of this Security Instrument, or of any other instrument or agreement now or hereafter executed in connection with the loan contemplated hereby;
    c. Borrower shall make an assignment for the benefit of creditors or a receiver shall be appointed for Borrower or its assets, which receiver is not discharged within sixty (60) days of his appointment;
    d. Borrower shall be adjudicated a bankrupt or file a petition for bankruptcy, reorganization or arrangement under the Federal bankruptcy laws;
    e. Borrower shall have filed against it a petition under the Federal Bankruptcy laws which petition is not discharged within sixty (60) days and provided the Federal Bankruptcy laws do not prohibit the declaration of a default under this Security Instrument;
    f. Borrower shall make any sale out of the ordinary course of business of all or a substantial part of Borrower's assets; or
    g. If any information provided to Lender or any representation, warranty or statement heretofore or hereafter made by or on behalf of Borrower is found by Lender to have been materially false, misleading, inaccurate or breached in any material respect.

Lender may, at any time after the occurrence of any one or more of the foregoing events of Default: (i) without further notice, declare the indebtedness to be due and payable immediately and (ii) exercise any and all other rights and remedies provided by this Security Instrument or the Note or by any other document, instrument or agreement executed in connection herewith, or by law, including appointment of a receiver, to which appointment Borrower hereby consents. Borrower acknowledges that the commencement of foreclosure proceedings shall be deemed acceleration. Lender may do this without making any further demand for payment. If Borrower is in default under the Note or this Mortgage, Borrower agrees to pay interest on the entire amount remaining unpaid as provided for in the Note, from the date of the Default.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and to have the Property sold. At the sale, Lender or another person, may acquire the Property.

If Lender starts a foreclosure action, Lender may ask the court to appoint a receiver to look after the Property to which appointment Borrower hereby consents and to collect rents from any tenant(s) on the Property. This action may be taken without prior notice to Borrower and without reference to the value of the Property. If Borrower occupies all or any part of the Property, then the receiver may collect a reasonable charge from Borrower for use and occupancy.

If an action is commenced to foreclose this Security Instrument and there is a sale at foreclosure, Borrower agrees that the Property may be sold in one parcel. Lender may ask an attorney either to foreclose this Security Instrument, to collect money Borrower owes under the Note and this Security Instrument, or to enforce any of the promises Borrower has made. If Lender does so, Lender may add all reasonable legal fees, costs, allowances and disbursements to the amount Borrower owes Lender, together with interest at the post-default rate specified in the Note.

19. **Power of Sale, Waiver of Rights**. This Mortgage contains a power of sale that permits Lender to cause the Property to be sold in the event of a default. Lender may elect to cause the Property to be sold by advertisement rather than pursuant to court action, and Borrower voluntarily and knowingly waives any right Borrower may have by virtue of any applicable constitutional provision or statute to any notice or court hearing before the exercise of the power of sale, except as may be expressly required under MCL 600.3201 and MCL 600.3204.

20. **Waiver of Jury Trial**. No party to the security instrument or any assignee, successor, heir or personal representative of a party shall seek a jury trial in any lawsuit, proceeding, counterclaim, or any other litigation proceedings based upon or arising out of the security instrument, any related agreement or instrument, any other collateral for the indebtedness or the dealings or the relationship between or among the parties, or any of them. No party will seek to consolidate any such action, in which a jury trial has been waived, with any other action in which a jury trial cannot or has not been waived. The provisions of this Paragraph have been fully discussed by the parties hereto, and these provisions shall be subject to no

exceptions. No party has in any way agreed with or represented to any other party that the provisions of this Paragraph will not be fully enforced in all instances.

21. **Borrower's Copy**. Borrower shall be given one conformed copy of the Note and of this Security Instrument. Methods of delivery of the Note and this Security Interest may be provided to Borrower via electronic means or by physical delivery.

22. **Cumulative and Non-Exclusive Remedies**. Each and every one of the rights, remedies and benefits provided to Lender herein or in any other document or instrument now or hereafter executed shall be cumulative and shall not be exclusive of any other of said rights, remedies or benefits, or of any other rights, remedies or benefits allowed by law. Any waiver by Lender of any Default shall not constitute a waiver of any similar or other Default.

23. **Survival of Representations, Warranties, and Covenants**. All representations, covenants and warranties contained in the Security Instrument or in any other document, instrument and agreement executed by Borrower in connection herewith shall survive the delivery of the Note, the Security Instrument and all other documents, instruments and agreements executed in connection herewith and the provisions hereof shall continue to inure to the benefit of Lender, its successors and assigns.

24. **Release**.  Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument and Borrower shall pay a reasonable charge for the preparation and filing of discharge documents as well as for preparing and delivering payoff statements, unless such charges are prohibited by applicable law.

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) or exhibits executed by Borrower and recorded with it.

*[Signature Page Follows]*

Dated this ___ day of March, 2023.

Borrower:

_____
Summit Financial LLC
By: Sonny Mandouh
Its: Authorized Member

STATE OF MICHIGAN     )
                      ) S.S.
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this ___ day of March 2023, by Summit Financial LLC, by Sonny Mandouh, its: Authorized Member.

_____
Notary Public Name: _____
Notary Public, State of Michigan, County of _____
My commission expires: _____
Acting in County of _____

**Drafted By:**
Elie Bejjani, Esq.
22174 Michigan Ave
Dearborn, Michigan, 48124

**After Recording Return To:**
Makiko Nakagawa
2F No 52, Lane 330, Songjiang Rd
Taipei, Taiwan

Page 9 of 10

# Exhibit A

**Legal Description**:

W CHEYENNE 461 AND E 8 FT OF VAC ALLEY ADJ GREENWICH PARK SUB L41 P28 PLATS, W C R 22/225 43 IRREG

**Commonly known as**:  19701 Cheyenne, Detroit MI 48235

**Parcel ID**: W22I026015S